# Authority of Chief Financial Officer Under
# FY 2003 HUD Appropriations

Provisions of the Department of Housing and Urban Development Appropriations Act for FY 2003 did not assign all responsibility for appropriations law matters to HUD's Chief Financial Officer to the exclusion of the General Counsel.

August 12, 2003

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF MANAGEMENT AND BUDGET

This memorandum responds to your request for our opinion concerning the proper interpretation of certain appropriations provisions for the Department of Housing and Urban Development ("HUD") contained in the Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11 ("2003 Act"). Title II of division K of that Act contained the salaries and administration provisions of the fiscal year 2003 appropriations for HUD. Those provisions included certain appropriations earmarked for HUD's Office of the Chief Financial Officer ("OCFO").

You have asked whether these appropriations provisions exclusively assigned all responsibility for appropriations law matters at HUD to HUD's Chief Financial Officer ("CFO"), effectively barring HUD's General Counsel from exercising any responsibilities with respect to appropriations matters. We conclude that the provisions in question do not have that effect. They provide the CFO with (or at least condition funding on the CFO's being provided (1)) exclusive authority to investigate potential or actual violations of federal appropriations law by HUD officials or components, but they do not provide exclusive authority or responsibility with respect to all other matters or issues concerning federal appropriations statutes that may arise at HUD.[1]

## I.

Under the general salary and administrative expenses appropriation for HUD, the 2003 Act provided that $21,000,000 was to be made available to the CFO "exclusively for activities to implement appropriate funds control systems, including . . . establishment of a division of appropriations law within the Office of the Chief Financial Officer." 2003 Act, 117 Stat. at 499. After listing several additional provisions respecting the OCFO, and providing for the transfer of "no

---

[1] You have not asked us, and we therefore do not address, whether the provisions addressed in this memorandum are permanent substantive obligations imposed on HUD or are merely conditions to the fiscal year 2003 appropriations. Our discussion assumes *arguendo* the former, and we therefore do not reiterate the alternative language of conditions where it would otherwise be appropriate to do so.

fewer than four appropriations law attorneys from the Legislative Division of the Office of Legislation and Regulations, Office of General Counsel to the OCFO," the 2003 Act then stated:

> *Provided further*, That, notwithstanding any other provision of law, hereafter, the Chief Financial Officer of the Department of Housing and Urban Development shall, in consultation with the Budget Officer, have *sole authority to investigate potential or actual violations under the Anti-Deficiency Act (31 U.S.C. 1341 et seq.) and all other statutes and regulations related to the obligation and expenditure of funds made available in this, or any other Act*; shall determine whether violations exist; and shall submit final reports on violations to the Secretary, the President, the Office of Management and Budget and the Congress in accordance with applicable statutes and Office of Management and Budget circulars: *Provided further*, That the Chief Financial Officer shall establish positive control of and maintain adequate systems of accounting for appropriations and other available funds as required by 31 U.S.C. 1514: *Provided further*, That for the purpose of determining whether a violation exists under the Anti-Deficiency Act (31 U.S.C. 1341 et seq.), the point of obligation shall be the executed agreement or contract.

*Id*. at 499–500 (emphasis added). The 2003 Act also made the funding subject to the conditions that the CFO appoint qualified personnel to conduct investigations; establish minimum qualifications for personnel that may be appointed to conduct investigations; and establish guidelines, timeframes, policies, and procedures for the conduct of investigations of "potential and actual violations of the Anti-Deficiency Act and all other statutes and regulations governing the obligation and expenditure of funds made available in this or any other Act." *Id*. at 500.

## II.

Apparently responding to certain communications from the staff of the House Appropriations Committee, HUD's Deputy Assistant Secretary for Congressional Relations recently set forth HUD's construction of the above-quoted provisions of the 2003 Act in a letter to Senator Christopher Bond:

> The initial reaction of the Department to both the statutory and conference report language was that the OCFO now has sole authority over all potential or actual violations of all appropriations laws. Pursuant to conversations with staff from the House Committee on Appropriations the congressional intent of the statutory and conference report language was clarified to mean that the CFO now also has sole authority in all matters of appropriations law, whether or not

the issues involve potential or actual violations. The Department will meet both the letter and spirit of the conference report by transferring all appropriations law responsibilities, beyond just potential or actual appropriations law violations, from the OGC to the OCFO.

Letter for Christopher S. Bond, Committee on Appropriations, U.S. Senate, from William M. Himpler, Deputy Assistant Secretary for Congressional Relations, Department of Housing and Urban Development, at 2 (Mar. 13, 2003).

In a subsequent letter to the Office of Management and Budget ("OMB"), however, Senator Bond strongly disagreed with HUD's interpretation of the OCFO appropriations provisions. Senator Bond stated in relevant part:

> This interpretation of the "Salaries and Expenses" account language is contrary to the House and Senate agreement on the Conference, the understanding of the Senate, the initial understanding of HUD (see HUD Letter dated March 13th) and the plain reading of the statutory language and the reports (see attachments) of the Act. . . . This interpretation and subsequent implementation will substantially undermine and erode the authority of the General Counsel to ensure HUD can meet its legal requirements in a consistent and effective manner.

Letter for Philip Perry, General Counsel, Office of Management and Budget, from Christopher S. Bond, Committee on Appropriations, U.S. Senate, at 1 (May 9, 2003).

A memorandum on this issue prepared by HUD's General Counsel expresses essentially the same view contained in Senator Bond's letter. *See* Memorandum for William M. Himpler, Deputy Assistant Secretary for Congressional Relations, from Richard A. Hauser, General Counsel, Department of Housing and Urban Development, *Re: Final Report to Appropriation Committees on Appropriation Law Functions* (Mar. 13, 2003). The General Counsel's memorandum states: "We strongly disagree with the interpretation that the [2003 Act] and accompanying Conference Report provide for all appropriations law functions and responsibilities to be under the jurisdiction of the CFO. The Act and the Conference Report do not support that interpretation." *Id*. Although the General Counsel stated that the 2003 Act gives the CFO "sole authority to investigate and determine potential or actual violations of the Antideficiency Act and other fiscal statutes," he asserted that "[t]his is the extent of the authority conferred on the CFO." *Id*.

In response to these conflicting interpretations of the OCFO appropriations provisions in the 2003 Act, you have asked this Office to determine the correct interpretation of those provisions.

## III.

It is clear that the foregoing provisions of the 2003 Act give the CFO extensive and exclusive authority (subject to obligatory consultation with the Budget Officer) to conduct and control investigations of potential and actual violations of the Anti-Deficiency Act ("ADA") and other appropriations laws and regulations within HUD. In that respect, the most pertinent language in the statute provides that the CFO "shall, in consultation with the Budget Officer, have sole authority *to investigate* potential or actual *violations* under the Anti-Deficiency Act (31 U.S.C. 1341 et seq.) and all other statutes and regulations related to the obligation and expenditure of funds made available in this or any other Act." 2003 Act, 117 Stat. at 499 (emphasis added).

We find no basis in the text of these provisions, however, to support the broader contention that the CFO was given sole authority, exclusive of the HUD General Counsel and his Office, to provide advice, counsel, or analysis for the Secretary or other HUD components on all matters and issues of appropriations law. The extensive investigative authority respecting actual or potential violations of law that was indisputably granted to the CFO simply cannot be equated with the exclusive authority to interpret, analyze, and provide advice respecting the federal appropriations laws for HUD and its components. Many matters concerning the federal appropriations laws at a department like HUD (e.g., determining the effect on HUD or its components of a binding judicial or administrative decision interpreting the federal appropriations laws) may arise without regard to the occurrence, or even the suspicion, of a violation of such laws. Moreover, none of the other detailed provisions of the 2003 Act concerning the appropriations and authorities of the CFO states or establishes that the CFO is to exercise the same exclusive authority over all other appropriations law matters that he exercises over the investigation of violations of such laws. Although the language of these provisions is somewhat cumbersome and wordy, we do not find it ambiguous in this respect.

Because the text of these statutory provisions is clear on this question, we need not resort to legislative history to ascertain their meaning. *See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("we do not resort to legislative history to cloud a statutory text that is clear"). In any event, our conclusion is consistent with pertinent legislative history concerning this provision. *See* H.R. Conf. Rep. No. 108-10, at 1427 (2003); H.R. Rep. No. 107-740, at 79 (2002) (House Appropriations Committee). These reports reinforce, rather than contradict, the import of the CFO provision's text: the CFO was given sole authority to investigate violations of the ADA and other appropriations laws. They do not state or indicate that Congress intended, contrary to the statute's text, to give the CFO exclusive authority at HUD with regard to all other matters or issues concerning federal appropriations law.

Finally, there is some suggestion in the documents provided us that the post-enactment statements of congressional staff, purporting to clarify the intent and meaning of the statutory provisions in issue, were given considerable weight by some officials in implementing those provisions. It is clear that such post-enactment statements are entitled to no weight in determining the meaning of a statute. *See, e.g., Regional Rail Reorganization Act Cases*, 419 U.S. 102, 132 (1974) (post-passage statements of legislators not entitled to any weight).

M. EDWARD WHELAN III
*Acting Assistant Attorney General*
*Office of Legal Counsel*
